May it please the Court. My name is Carla Farrell. I'm with the Oregon Department of Justice. I'm here on behalf of the two defendants who work for the Oregon Department of Transportation, otherwise known as ODOT. In the fall of 2006, the ODOT defendants became concerned about the conduct of Plaintiff James Thomas at the Suncrest Rest Area. He was making frequent visits to the rest area and his conduct was becoming increasingly disruptive. They consulted with the Oregon State Police about their options and they decided to formally exclude him from the rest area. That choice allowed the State Police to enforce the exclusion under criminal trespass law. Defendants are entitled to qualified immunity for that decision because both prongs of the qualified immunity test are met here. First, the facts alleged do not make out a violation of Plaintiff's Fourth Amendment rights. And second, the facts alleged do not make out a violation of Plaintiff's Fourth Amendment rights. And third, the facts alleged do not make out a violation of Plaintiff's Fourth Amendment rights. And the fact that he was arrested without probable cause. He alleges that based on his assertion that as a matter of law, the defendants were without authority to exclude him from the rest area. Okay. Just stop. If they were without authority, they had no basis to permanently exclude him, he would allege, I mean, those facts would show that he meets the first prong, correct? I'm sorry. I think I'm not quite understanding your question. There's no probable cause. Excuse me? There's no probable cause. There's no authority to arrest. Well, that's true, but that's why the legal issue is entitled, is crucial here. That's why he's getting to the first prong. I'm just going to the first prong. So then you go to the second prong and ask, well, is it you look, we have to look at the particulars of the case. I mean, you can't just do a general arrest for trespass. But in this particular circumstance, was the law clearly established that they could permanently exclude him from the rest area? The test is whether the law was clearly established that they could not. There was no indication. Where does that come from? That comes from. Does it make any difference either way, whether they could or they could not? It's the same question, isn't it? It makes a difference as to whether these defendants are entitled to qualified immunity as to whether or not there was a legal basis for their action and whether they knew it was a legal basis for their action. Right. Well, so we're back to the first element then. In my opinion, we start at the first element because. Well, is there or is there not a legal basis, in your opinion, for the exclusion? Yes, there is a legal basis for the exclusion. And the legal basis is what? Well, ODOT has authority as a State agency and as the owner of the property to protect its interests in the property and to limit access to the property. It also has. Well, what does it depend on? The case, the statute, the regulation? What? Common law, criminal trespass law, the State agency's authority under State law. All three of those allow a property owner to exclude persons from its property. And that includes Federal. Okay. Let's take one at a time. What's the State law? The State law, there's an entire chapter under ORS that authorizes Oregon, the Oregon Department of Transportation, to take various actions to facilitate the transportation system in the State, and that includes acquiring property, improving property. Well, is there like an excluding the public from a public area? It's implicit in the ability to. Well, when you say it's implicit, it's not in the statute then. Is there a statute then? There's no direct authority in the statutes that allow ODOT to obtain property to exclude. If there's no direct authority in the statute, then what else is there? You see. Common law. It's the inherent right of a property owner to exclude, to limit access to their own property. It's like any other property owner. Now, so how do you do that? How do you do? How do you do that? How do you exclude someone? Yeah. Well, there's a number of ways that can be done in. First of all, say like Pioneer Square, for instance. You have to give them notice, right? In Pioneer Square, first of all, that's a slightly different issue because that's a public forum and this is not. But there would have to be, and there wasn't in this case. Highway rest area isn't considered public? It's considered public. But in the, if you're talking about the First Amendment analysis, and we're not. I thought we were talking about the Fourth Amendment. I realize that. And then there is no. There's government-owned property that's closed. I can't wander onto the grounds of a State prison. I can't go into somebody's office. But there's public area that's considered open. And it seems to me the rest area next to the highway is not all that different from a park. It's generally considered open. So we start wondering, okay, if some government official says you're banished from this and says not only get off and don't come back, well, what's the source of the authority for the and don't come back? It turns out when you look at the regulation, it doesn't give any authority, don't come back. The regulation is not the only authority. But so which is why you're trying to reach to a property owner's inherent authority. Well, it's kind of a reach. I mean, if you've got a regulation, ordinarily you expect the regulation to speak to the subject, don't you? Otherwise, why do you have the regulation? What you're saying, you don't need any of these regulations because he works for the highway department. He's got the authority to tell people get lost and don't come back? It's an alternative source of authority. So why do we have the regulation? Why is the State private? The regulation has to do with what the attendant can do at the time. You told me the attendant can inherently do that. You don't need a regulation. Well, this is a what the regulation does is specifically authorizes a specific person to take specific action at the rest area. Action which you say he can do inherently anyway. Not the attendant as an employee. I'm talking about ODOT as an agency, which is a different issue. And there are reasons, there are reasons for having more than one source of authority. And in fact, if you look at the legislative history of the amendment to the criminal trespass law, the City of Portland had enacted its own ordinance so that it did not have to rely on the State law because the State law wasn't as, it was, had different terms. But what the law was concerned with was the private owners of private property stores, which are also open to the public, having the ability to exclude persons who were disruptive, and what that requires. Actually, there's no requirement. But what the property owners will do in that case, now that the law has been amended, is issue either a written or an oral exclusion order. And that's what happened here. An exclusion order to... So that's under what? That's under the Oregon criminal trespass statute? That's right. And the cases I cited from Oregon in which the courts allowed the University of Oregon and a public school in Portland, neither one of them required a specific regulation. The order, the exclusion order itself was enough. And those... So these cases say what? First of all, you have to give the person notice? I don't. That issue didn't come up in either one of those cases. But in the Portland, in the University of Oregon case, there was a written exclusion order in the public school. But the person wouldn't. I mean, you would need notice, right? And they did have notice. Well, did this plaintiff in our case have notice? Yes. He had. He was told three times by the state police that he had been excluded after checking with ODOT employees. I would like to reserve the rest of my time for rebuttal, if I might. Sure. Thank you. May it please the Court. I'm Michael Furnell on behalf of the appellee in this case. This case is a case where the State did not have authority to exclude. Well, what about her the last thing she said about the criminal trespass statute? Well, the criminal... That doesn't apply to public property? The criminal trespass statute doesn't give an independent authority to exclude. What it indicates in there in the amended statute is that they can exclude or a person can be arrested for criminal trespass when they enter premises that are open to the public after being lawfully directed not to enter the premises. But that still begs the question of what is a lawful direction not to enter the premises. And so that doesn't give an independent authority. Well, what was the authority in the case that she had, you know, the university case? In the university cases, it's well established that schools generally are not considered property that is open to the public. They limit access into the schools to the people that... By statute? By case law? By case law. When you go back and look at the case law, schools are properties that are not considered open to the public. They are limited to the... And so the person excluded in this case was a member of the public, not a student? Yes. In fact, the Oregon case, the most recent Oregon case that she cites actually relates to an elementary school, and there was an itinerant preacher that was out on the sidewalk that was preaching to the children as they were getting off the bus, and he entered into the school grounds. And so clearly not a student in that case. Let me just ask you, if you put aside for a moment the state criminal trespass law... Okay. ...and the reference to common law authority of a property owner, and you just go to the regulation... Again, Constance... Let me just ask you this. So if you were a, you know, a reasonable official at the Department of Transportation and you had this question in mind, can I exclude this person, can I tell him not to come back, why couldn't somebody think that they might have, reasonably think that they might have the authority... Because it's... ...by reading this regulation? Because it's property that is open to the public. And by being... Well, but this regulation says you can kick somebody out if they engage in any of those activities. If you have lawful authority to kick somebody out. And that's the question. Well, isn't this so if some fellow at the, you know, some driver pulls in there and engages in an altercation with Judge Tashima, they can kick him out, right? They can kick him out, but they can't exclude, they can't permanently exclude him. Well, suppose the guy comes back and kicks out Judge Clifton. And they say, we don't want you back ever again. Don't come back. And I don't believe that they have that authority to do so. Why couldn't somebody reasonably read this to think that they might have? Well, Oregon requires its public agencies to act through administrative regulation when it deals with matters that are generally... Yeah, but his question is, why can't this regulation be read as employing that authority? Because the regulation specifically indicates that the attendant can request the person to leave. Right. But it doesn't say, but it doesn't say, and you can't permanently exclude him. Right? So why can't you imply that exclusion power into the regulation? Then that would be... That's not a reasonable reading of the regulation? No, that's not a reasonable reading of the regulation. There's no case law that says it's not, is there? There is no case law that says that it is not. If there's no case law, isn't it a doubtful proposition at best? I don't believe so. When you look at the plain language of the regulation itself, it says they can ask them to leave. You think it's so plain that any ODOT employee who says, well, I think under this regulation I can tell you never to come back, that that's no question, that's not authorized? Yes, I do. Now, here they took it a little step further. They consulted with the state police. The state police said, well, you know, go ahead, exclude him. Does that make any difference here? I don't believe it makes any difference at all because, again, the state police are not experts in the law. They can look at what a normal property owner has the opportunity to do. And, in fact, when I questioned the state police on this, they refused to give me any interpretation of the law. What do you mean by questioning? In the depositions, they said that it's not up to them to interpret the law, that they have to rely upon the property owner. And so we have a he says, she says situation here. Each of them are pointing their finger at the other, and neither of them are taking responsibility for the actions that they took. And, again, under constitutional law, when you're dealing with a government agency and you're dealing with property that's open to the public, there cannot be an unbridled exercise of discretion on the part of the administrative official. So if we, by the state's argument, that the official there that was in charge of the rest area could exclude a person from the property, then what limitations do we have on that power? I don't understand the source of your argument, there can't be unbridled discretion. This isn't a First Amendment case. Your client wasn't there to speak to the public. And I'm not dealing with the person. Hear me out. He's there, and you claim he's there regularly visiting to check on the cleanliness of the restrooms, which is about as preposterous as I can imagine. He's there to use the restroom on a regular basis. It's not a First Amendment right to do that. If they say, look, we're not maintaining this rest area for you, you're disruptive out of here, where's the constitutional basis for him to say that government can't do that just because it's government property? Well, when you go in, and I agree, there's not a case that I found in the Ninth Circuit that indicates that. When you look at the Sentinel Communications case that's out of the Eleventh Circuit, it deals with property that is open to the public that is not considered a public forum, which is the case of the rest area. And there are cases out there holding that rest areas are that type of property. They're open to the public, not a public forum. So it's not a First Amendment issue. It's an issue of constitutional discretion to discriminate against a person with unbridled discretion. And the ODOT doesn't have that authority because otherwise then maybe they could exclude somebody because they were too old. It takes them too long to get in and out of the restroom. Maybe they could exclude somebody because they're the wrong race. And so there's a lot of areas that if you have an unbridled discretion. Well, it's clear that they couldn't discriminate on those kinds of grounds. But short of an allegation, and to do so would violate anti-discrimination statutes. But I know of no anti-discrimination statute or constitutional privilege that speaks to whatever your client's basis for being there is or that it singles out your client based on one of those prohibited classifications. There are several categories that my client could fit within in protected categories. And you could bring an anti-discrimination action, but that's not the lawsuit we have in front of us. No. We have a lawsuit for wrongful exclusion. Again, there's buying the State's argument. There's unbridled discretion that's being exercised here. The State requires. Well, they don't use it. They don't say unbridled discretion. They're just basically saying they have the authority to permanently exclude him under all the circumstances. But what are the parameters of that exclusion? Where does the authority come from? Well, presumably, as I understand it, he engaged in some of this activity here. The main one being was that he'd gotten an altercation. It's true he was involved in an altercation, but he was the victim of the altercation. Well, I gather that from what I've read in the record, he had frequented this particular rest stop a number of times. Yes, and he has frequented the rest stop on a number of times. But what is wrong with that? I'm not saying there's anything wrong with that. Yeah. There's nothing wrong with frequenting the restroom on a number of occasions. And if, again, if ODOT was excluding somebody because they'd been there, you know, ten times or a hundred times. Well, so my point was just simply that they take his conduct over a period of time. Apparently, they thought that he had violated one of these prohibitions in the regulation. And I guess, you know, you could say, well, you know, they looked at it and they – if they had looked at it. Right. I don't know that they did. But they then said, well, we think we have the authority under all these circumstances to permanently exclude him. And your response to that is, well, that's an unreasonable interpretation of the regulation. Right. It's not authorized in the regulations. Thank you. Okay. Just briefly, with regard to the Sentinel case, it was a First Amendment case having to do with the placement of news racks in a public – on public property. So it's not on point. Second of all, with regard to this case, this is not a – this was not a challenge to the agency's decision to exclude him. This is a challenge to his arrest. And the arrest being subject to probable cause, whether or not it was subject to probable cause, is the issue. There was no challenge to the exclusion order directly. No, no. It is challenging the basis for exclusion because there's no legal basis to exclude. There's no probable cause. I understand. So he does challenge the exclusion. But not – not directly. There's no – there's no – But necessarily. There's nothing in the complaint that argues that the exclusion order was unlawful. It doesn't have to. There's no – I mean, that's the only basis for probable cause. I'll – I'll concede that. Let me go back and ask you to respond to Mr. Fernell's point that, well, you know, the university and the school trespass cases you rely on, the order was – exclusion order was lawful because those persons weren't entitled to be on the property anyways because they weren't open to the public. Well, universities actually are open to the public. I'm not sure where he – where that – what the source of authority for that position is. Well, he says they're open to students, faculty, people who have business, but not necessarily to the general public. Yeah. And I'm not sure what the source of authority for that position is. Well, did the case discuss that? No. Well, all right. Is there a case that does apply to, say, you know, public property open to the general public? Not that I'm aware of that covers this particular situation. And that goes to my – to the second prong, actually, whether there's a clearly established law. And as this Court said recently in the Edgerly case, which plaintiff cites in his brief, the clearly established prong has to do with what the – whether there's any case law on point that clearly establishes that this would be an unlawful action. And here we don't have any such thing. Nobody – this kind of situation has never been addressed in Oregon law. It says there has to be case law. That's the clear – my clear and my understanding of what the cases say. Well, it's just as Shima mentioned earlier. You know, there is – there – we recognize that there is no case law here. Right. And I'm not sure that it's – You know, any conduct can be – can be so obvious that the conduct violates the Fourth Amendment. And we don't have that here. There's no obvious – there's no principle. That may be a poor word on my part, but, you know, you look at this regulation and it says to preserve State property and increase health and safety in rest areas, the following activities are prohibited by visitors to a rest area. It doesn't even say that – where does it say – where does it say that they can leave and, you know, exclude somebody for – The second – there's a second regulation that gives the – an attendant the authority to ask someone to leave. But we're not claiming that's the source of their authority. I'm not even sure that ODOT or anybody looked at that regulation. They were looking at criminal law. But the failure to leave the rest area when so ordered is citable by a law enforcement officer as a violation of these rules. Where are you? I'm not sure what you're looking at. Oregon Statute 7734-030-0015. There is – Subsection 1, to preserve State property, increase health and safety in rest areas. Are you looking at the current statute, the current rule? The current rule has been – the rule – I have current through June 1, 2010. There's a new one? That's been enacted since – since this case. Oh, I see. It doesn't apply to what the – to the situation. It's been amended recently. So the version you're reading is not the version that was in effect. And the version that was in effect? I'm sorry. It's in the briefing. I don't have the reference in front of me. Okay. I'll double-check. Let me ask a question. It's on the red brief, page 22. Okay. I'm way over my time. That's okay. Okay. Let me ask a question. District court appears to have construed this regulation as limiting the authority of agency employees in the sense that, well, for the, you know, to apply the criminal trespass statute, there has to be a lawful exclusionary order. And under the regulation, the agency employee had no authority to issue an exclusionary order. Therefore, the order to, you know, there's no basis for applying the trespass statute. Wasn't that the reasoning of the district court? The reasoning of the district court appears to be that there was no authority on the part of the agency. So does authority – so my question is this. Was the district court mistaken in construing the dot, O dot authority in that fashion? Yes, because there was – he read it as being an exclusive source of authority and it's not exclusive. And what is the other source besides the regulation to, you know, to issue an order of exclusion? The inherent authority of an agency to control its own property. I – not every – When you say agency, you mean any property owner? Any property owner can limit access to their own property with the exception of – and that's relatively limitless. That's still going too far. But the only exception really is public property that's an open forum and the exclusion is based on improper – What case just supports everything you just said? That's a compilation of cases. I'm not sure I can give you some citations. I don't – I'm not aware of any case that says what you just said. All right. There's no – the only limitation seems to be civil rights law and on the control of your own property. Civil rights law, you mean such as the First Amendment right? And, you know, discrimination laws, et cetera. Those kinds of things would not be acceptable reasons. But that does not mean that there's no ability to exclude someone from public property who's creating a nuisance without having a rule that precisely says so. Well, no. You just added, you know, was the plaintiff creating a nuisance on the day he was arrested? On the day he was arrested, no. But his conduct over a course of time had steps. Did they tell him you're a nuisance and therefore you're excluded from this property? I don't believe they used the word nuisance. They just said the ODOT has excluded you. Thank you very much. Thank you.  Thank you, counsel.
judges: Tashima, Paez, Clifton